UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60051-CR-ALTMAN

**UNITED STATES**,

  *Plaintiff*,

v.

**CLARENCE JACKSON**,

  *Defendant.*
_____/

## ORDER

Shortly after Clarence Jackson was released from an 11-year prison term, an old prison friend stole his car at gunpoint. When the carjacker turned up dead, Jackson became a prime suspect in the ensuing homicide investigation. Then, during an interview with police, Jackson admitted that, despite his prior felony convictions, he illegally kept a firearm in his car. Based on this confession, the police searched Jackson's car and confiscated his firearm. But, when the police arrested him for this first firearm two weeks later, they found him in possession of a second firearm. A federal grand charged Jackson with two counts of felon-in-possession, and Jackson took the charges to trial.

After a three-day trial, a petit jury in this District found Jackson guilty of possessing those firearms, and a judge on this Court sentenced him to 235 months in prison. Now, some 12 years later—and with about eight years left on his sentence—Jackson asks this Court to reduce his sentence to time served. We deny Jackson's Motion[1] for two reasons. *First*, Jackson has not substantiated his

---

[1] The Motion is now ripe for adjudication. *See* Motion for Compassionate Release (the "Motion") [ECF No. 131]; Response to Motion for Compassionate Release (the "Response") [ECF No. 136]; Reply to Response to Motion for Compassionate Release (the "Reply") [ECF No. 137].

claim that his incarceration presents "extraordinary and compelling" circumstances. *Second*, he has not shown that he's no longer a danger to the community.

## THE FACTS

The Defendant, Clarence Jackson, is 51 years old. *See* Response at 13. In 2008, less than a year after Jackson was released from an 11-year prison sentence for selling cocaine, *id.* at 16, an assailant named Evans shot at Jackson and stole his car, *see* Trial Tr. [ECF Nos. 116–18] at 300. Later that same night, Evans was found dead—shot and killed—near Jackson's stolen car. *See id.* at 175, 183.

Jackson reported the stolen car to the police. *Id.* at 300–01. The next morning, Jackson learned from a friend that police officers were towing his car back to the police station. *Id.* at 302. When Jackson went to reclaim his car, *id.*, the police asked him some questions about Evans's murder, *id.* at 306. Jackson first aroused the police's suspicions because he "gave the description of the suspect, facial features and things like that. However, through this interview he advised [the carjacker] was wearing a ski mask." *Id.* at 175. Jackson initially denied knowing the assailant but "later advised he knew it was Mr. Evans from the beginning he has known him well enough, he knows how he walks, talks, things like that." *Id.* at 176. Jackson told the officers that he'd first met Evans in prison and that, by the time Jackson got out, the pair "were hanging out every day, that is at one point." *Id.* at 201. But, Jackson admitted, about two days before the theft, he and Evans had an argument over a debt ($150) Evans owed him. *Id.*; *see also id.* at 273 ("It was heated. Mr. Evans was saying heated things to my brother-in-law, Mr. Jackson[.]"). By the end of the interview, Jackson's evasiveness about knowing Evans, his extensive criminal history, and his potential motive turned him into "the number one suspect" in Evans's death. *Id* at 306.

During the interview, the police asked Jackson about firearms. Although he initially denied owning any, he later admitted that "he [had] a 38 that belonged to his mom"—though he insisted that "it wasn't in the vehicle at the time the vehicle was stolen[.]" *Id.* at 176. By the end of the hour-long

interview, however, Jackson had confessed that he *did* keep a gun—a .40 caliber with a broken trigger guard—in the car. *Id.* After the interview, the police got a search warrant and, sure enough, found a .40 caliber Taurus with a broken trigger guard hidden in a secret compartment beneath a speaker box in the backseat of Jackson's car. *Id.* at 182, 212. When confronted with this evidence, Jackson admitted that the gun was his and said that he needed it for protection. *Id.* at 191–92. Jackson, a convicted felon, was subsequently indicted for illegally possessing a firearm and ammunition. *See* Indictment [ECF No. 1].

For reasons that aren't relevant here, the police didn't arrest Jackson for almost two weeks. When they did, though, they searched his car again and found a *second* gun—a .38 caliber revolver—in the same hidden compartment in the backseat. *See* Trial Tr. at 232. This second gun led the Government to charge Jackson, by superseding indictment, with a second count of illegally possessing a firearm. *See* Superseding Indictment [ECF No. 28].

On December 18, 2008, after a three-day trial, a federal jury convicted Jackson on both counts. *See* Jury Verdict [ECF No. 85]. On May 1, 2009, Judge Daniel Hurley of this Court sentenced Jackson to 235 months in prison—to be followed by 60 months of supervised release. *See* Judgment [ECF No. 97]. As of this writing, Jackson has served only 12 years of that sentence—though he claims that, with his "good-time" credits, he's served more than 75% of his sentence and will be eligible for release in April 2025. *See* Motion at 1.

**ANALYSIS**

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

3

earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see United States v. Stuyvesant*, 454 F.Supp.3d 1236, 1238 (S.D. Fla. 2020) (applying the framework). The Court will discuss each of these four steps in turn.

### I. Exhaustion of Administrative Rights to Appeal

Although Jackson claims to have exhausted his administrative rights to appeal when he "submitted his request for the Bureau's recommendation for sentence reduction in May, 2020, and was denied," he hasn't appended either his request or the denial to this Motion. *See* Motion at 1. The Government contends that "[t]he Federal Medical Center at Butner, North Carolina, where defendant is incarcerated, advised that at least at the time of the filling [sic] of his motion, he had *not* submitted a request for compassionate release." Response at 9–10. In his Reply, Jackson declares, under penalty of perjury, that he had "sent a written request for consideration of sentence reduction/compassionate release to my unit staff. I received a Security Data Sheet dated 6-10-2020 in response from Ms. Earwin telling me that I was not eligible. She did not return my written request." Reply, Ex A. Jackson includes an untitled, printed sheet, dated 6-10-2020, which appears to show his name and the words "Security/Designation Data" at the top. At the bottom, someone handwrote the following: "You are not eligible for early release under the First Step Act or CARES ACT due to your history of serious violence. You have history of assault/battery. Additionally, you were found guilty of Code 201-Fighting. M. Earwin 6/10/2020." Reply, Ex. B.

The Government would have every right to argue that, by not including this evidence in his Motion—and by surprising the Government with it in his Reply—Jackson has waived the argument.

4

*See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). Waiver or not, Jackson never establishes that Earwin had the authority to bind the BOP or to deny his request. And, of course, since it was indisputably Jackson's burden to show that he exhausted his remedies, this is all reason enough to dispense with his Motion. More fundamentally, though, even if Jackson had exhausted his administrative rights, his Motion would still (for the following reasons) be denied.

## II. 18 U.S.C. § 3553

After considering the relevant § 3553 factors, Judge Hurley sentenced Jackson to 235 months in prison, *see* Judgment, and the Eleventh Circuit affirmed, *see United States v. Jackson*, 367 F. App'x 55 (11th Cir. 2010). In his Motion, Jackson does not challenge Judge Hurley's application of the § 3553 factors, and this Court sees no reason to disturb Judge Hurley's findings—which, after all, were affirmed on appeal. Thus, to the extent they are applicable, the § 3553 factors counsel against a reduction here.

## III. 18 U.S.C. § 3582

District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment

> (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

18 U.S.C. § 3582(c)(1).

Because Jackson is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But Section 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

> 1. **Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

6

(ii) The defendant is

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt n.1.

The reference to "subdivision (2)" requires the Defendant to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

**(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)  the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

The Defendant bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

As a preliminary matter, Jackson cannot satisfy the "Age of the Defendant" test because he is 51 years old, not 65, and has not alleged any age-related decline. His request for relief, then, hinges on his ability to meet either of the two elements of the "Medical Condition of the Defendant" test. The first element requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). The second requires him to establish that he suffers from any of three conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii). But Jackson does not allege that he suffers from *any illness at all. See generally* Motion. Instead, he says only that he should be released because of the ongoing COVID-19 pandemic. *Id.* at 2.

The Court acknowledges that the spread of COVID-19 has been pervasive and devastating. It has challenged our institutions, undermined Americans' ability to maintain their economic security, and altered the way people interact. More fundamentally, it goes without saying, the pandemic has

resulted in widespread suffering. In the United States alone, more than 31,100,000 people have tested positive for the disease, and over 560,000 Americans have died from it. *See* CDC, *COVID Data Tracker*, available at https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last accessed Apr. 14, 2021).

But "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Additionally, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberthard*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)). The Court sees no reason to depart from the BOP's well-reasoned view on this question.

Attempting to parry this conclusion, Jackson argues that his circumstances are extraordinary because of "not only the significant amount of time the Defendant has served but his having taken seriously this Court's admonition at sentencing to use his time to change the direction of his life[.]" Motion at 2. But neither the amount of time Jackson has served nor his (alleged) post-conviction rehabilitation render his circumstances "extraordinary."

Of course, "the significant amount of time the Defendant has served" can be a *compelling* circumstance—but *only if* the Defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13 cmt n.1. As we've said, however, because Jackson isn't 65 years old—and since he hasn't pointed to any age-related deterioration—he simply doesn't qualify for release under this provision.

Even if he did, though, the Court would not reduce his sentence because, compelling or not, 12 years is not "extraordinary" in our federal system. *See Extraordinary*, *Merriam-Webster Unabridged*, https://www.merriam-webster.com/dictionary/extraordinary (last visited Apr. 14, 2021) (defining "extraordinary" as "going beyond what is usual, regular, or customary"). Federal judges across the

9

country *routinely* impose far longer sentences. *Cf. United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (affirming district court's denial of compassionate release motion, which had been premised on the argument that serving 14 years of a 30-year sentence was adequate punishment).

Jackson's claim that he has "changed the direction of his life" fares no better. Rehabilitation, after all, is neither a compelling nor an extraordinary circumstance. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *see also United States v. Fine*, 982 F.3d 1117, 1119 (8th Cir. 2020) (quoting § 994(t) for the proposition that rehabilitation alone cannot constitute an extraordinary and compelling circumstance); *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (same); *United States v. Green*, 2020 WL 6887970, at *2 (S.D. Fla. Sept. 14, 2020) (same).

Because Jackson has not shown that his circumstances are either "compelling" or "extraordinary," his Motion must be **DENIED**.

### IV.    18 U.S.C. § 3142

Even if Jackson had shown compelling circumstances, his Motion would still be denied because he has failed to establish that he no longer poses a danger to his community. As the relevant Sentencing Guidelines provision makes clear, the "extraordinary and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if the Defendant demonstrates that he no longer poses a threat to society, as defined by 18 U.S.C. § 3142.

In assessing dangerousness, Section 3142(g) requires the Court to consider: (1) "the nature and circumstances of the offense . . ., including whether the offense . . . involves . . . a controlled substance, firearm, explosive, or destructive device"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . (A) the person's . . . past conduct . . . [and] criminal history"; and (4) "the nature and seriousness of the danger to any person

or the community that would be posed by the person's release." Each of these factors weighs against Jackson here.

*First*, Jackson was convicted of two counts of possession of a firearm and ammunition by a convicted felon; his "offense[s] of conviction" thus "involve [a] firearm."

*Second*, the evidence against Jackson was strong. In fact, after reviewing that evidence, a federal jury convicted him on both counts of the Superseding Indictment. And, after careful review, the Eleventh Circuit affirmed his conviction.

*Third*, Jackson has an extensive criminal history. The Government submits—and Jackson does not contest—that Jackson has adult convictions for: burglary of a dwelling, attempted robbery, *unlawful possession of a firearm by a convicted felon*,[2] burglary of a dwelling with a dangerous weapon, robbery with assault and battery, possession with intent to sell or deliver cocaine, and a sprinkling of minor drug possession charges. Response at 18; *see generally* Reply.

Jackson's demonstrated history of recidivism weighs heavily against him. Jackson served a one-year sentence in 1995 and, less than a year later, was convicted of selling cocaine and (erroneously) sentenced to thirty years. Response at 18. Amazingly, without a lawyer, Jackson got his sentence reduced and persuaded a judge to release him after he'd served just 11 years in prison. Despite this break, he spent less than a year out of prison before he was found in possession of a firearm—an offense for which he was soon arrested. Did Jackson learn his lesson? No. Just two weeks later, he was found with *another gun*, arrested, and convicted again. If you're counting, that's *three* felon-in-possession convictions. In sum, Jackson has spent 23 of the last 25 years in jail.

---

[2] Note that—even before the twin felon-in-possession convictions that landed him here—Jackson had already been convicted of being a felon in possession of a firearm.

*Fourth*, Jackson does not—and cannot—show that his release would pose no "danger to any person or the community." Jackson submits that his time in prison has led him to change the direction of his life and that he "has inculcated to [sic] tools of conflict resolution and now resolves conflicts with his head and not the threat of violence." Motion at 2. But Jackson admits that he continues to get into trouble in prison: he was found guilty of fighting in 2013; "using an intoxicant (alcohol)" in 2016; and (twice) was convicted of violating prison protocols by refusing to submit to drug-and-alcohol testing. *See* Response at 18–19, *see generally* Reply (not disputing these facts). Jackson has thus repeatedly shown that he cannot (or will not) follow the rules of ordered society—whether in or out of prison. On these facts, this Court will not release him early.

\*\*\*

Accordingly, after a careful review of the parties' filings, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** that the Defendant's Motion for Reduction in Sentence [ECF No. 131] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 14th day of April 2021.

_____
ROY K. ALTMAN
UNITED STATES DISTRICT JUDGE

cc:   counsel of record
      Clarence Jackson, *pro se*