**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 08-60051-CR-ALTMAN**

**UNITED STATES**,

    *Plaintiff*,

*v.*

**CLARENCE JACKSON**,

    *Defendant.*
_____/

**ORDER**

Just nine days after the Court denied his last motion for compassionate release, Clarence Jackson is back with two new arguments—both unavailing. We **DENY** his new motion [ECF No. 143] ("Renewed Motion") for three reasons.[1] *First*, Jackson hasn't exhausted his administrative remedies. *Second*, the § 3553 factors weigh heavily against his release. *Third*, he still hasn't established extraordinary and compelling circumstances.

**ANALYSIS**

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id*. *Third*, the Court should turn to the "extraordinary

---

[1] In doing so, we incorporate into this Order the factual history and legal standards sections of the first Order Denying Compassionate Release. *See* First Order [ECF No. 141].

and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see United States v. Stuyvesant*, 454 F.Supp.3d 1236, 1238 (S.D. Fla. 2020) (applying the framework). The Court will discuss each of these four steps in turn.

### I.     Exhaustion of Administrative Rights to Appeal

Jackson now maintains that he has exhausted his administrative remedies. As support, he says only this: "See attached (Exhibit A)." Renewed Motion at 6. But there is no Exhibit A. *See generally id.* Jackson did file a proposed release plan. *See* Notice [ECF No. 144]. But he didn't attach any request for compassionate release (to the Warden or anyone else) either to his proposed release plan or to this Renewed Motion. *See generally* Renewed Motion; Notice. And it was indisputably his burden to establish that he's exhausted his remedies. *See United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) ("The defendant bears the burden of establishing that his circumstances qualify for compassionate release"); *United States v. Jackson*, 2020 WL 5942201, at *2 (E.D. La. Oct. 7, 2020) ("The defendant bears the burden of demonstrating that he is entitled to compassionate release and that he has exhausted his administrative remedies."); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("And a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case."). Since Jackson has failed to show that he's exhausted his administrative remedies, his Renewed Motion must be **DENIED**.

But, even if Jackson had exhausted his administrative remedies, his Renewed Motion would (for the following reasons) still fail.

**II.     18 U.S.C. § 3553(a)**

After considering the relevant § 3553(a) factors, Judge Hurley sentenced Jackson to 235 months in prison, *see* Judgment—a sentence the Eleventh Circuit affirmed, *see United States v. Jackson*, 367 F. App'x 55 (11th Cir. 2010).

Jackson now argues that the § 3553(a) factors support his request for release because his offenses were non-violent and involved no victims. *See* Renewed Motion at 8. As he sees things, he has already spent "years behind bars," which "promotes respect for the law and provides just punishment for his crimes," and "a reduction in sentence would also avoid unwarranted sentencing disparities among the Defendant and other defendants with similar records found guilty of similar conduct." *Id.* (cleaned up).

We aren't persuaded. Let's start with respect for the law: After his *first* felon-in-possession-of-a-firearm conviction, Jackson served 11 years in prison. *See* First Order at 11. *Less than one year later*, though, he acquired a second firearm—again, in violation of state and federal law—and was (again) arrested. *Id.* Incredibly, *less than two weeks after that*—and while facing a ten-year sentence in federal court—Jackson got himself a *third* gun, for which he was (yet again) arrested. *Id.* He was promptly convicted of possessing the second and third firearms and now wants the Court to ignore his propensity for recidivism and let him out early. *Id.* This the Court will not do. To release Jackson now—midway through his sentence—would be to send precisely the wrong message: that gun crimes aren't serious, that the dangers of arming felons are overblown, and that the penalties set out in our gun laws needn't be strictly followed. Releasing Jackson, in other words, would *decrease*, rather than increase, the citizenry's respect for the law. *See* 18 U.S.C. § 3553(a) (directing courts to consider whether the sentence will provide "adequate deterrence" and "promote respect for the law"). More fundamentally, Jackson's long criminal history strongly suggests that he doesn't obey the law, that he doesn't respect the law, and that there's very little any judge—state or federal—can do to stop him

from continuing to break the law. Put differently, keeping Jackson in prison seems to be the only way to (specifically) deter him from committing future crimes—another important consideration under § 3553(a). *See id.* (directing courts to consider whether the sentence will "afford adequate deterrence to criminal conduct").

Nor is Jackson right to minimize his crimes as "non-violent" and victimless. Congress has determined that convicted felons should not be running around town with guns. *See* 18 U.S.C. § 922(g). In saying so, Congress expressed the commonsense view that convicted felons are particularly dangerous when they are armed. *See Lewis v. United States*, 445 U.S. 55, 67 (1980) ("The federal guns laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons. Congress' judgment that a convicted felon, even one whose conviction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational."). And Jackson, remember, has participated in this dangerous criminal conduct—possessing a firearm after having been convicted of a felony offense—on at least *three* separate occasions. The Court therefore finds that both the nature of the offense and the history and characteristics of the Defendant—two important factors under § 3553(a)—likewise weigh against a reduction here.[2]

The § 3553(a) factors thus support the Court's decision to deny Jackson's request for early release.

### III.     18 U.S.C. § 3582

As we explained in the First Order, however, even if the § 3553(a) factors supported Jackson's position, his Motion would still fail because he cannot satisfy the "extraordinary and compelling"

---

[2] And, since Jackson received a bottom-of-the-guidelines sentence, *see Jackson*, 367 F. App'x at 59, he'd be hard-pressed to show that his sentence somehow created unwarranted sentencing disparities—the last § 3553(a) factor this Court has considered.

4

reasons test. District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; . . .

18 U.S.C. § 3582.

Because Jackson is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But Section 3582 never describes the kinds of "[e]xtraordinary and

compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). The Commission has helpfully defined the contours of the test as follows:

1. **Extraordinary and Compelling Reasons.**--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   **(A) Medical Condition of the Defendant.**

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   **(B) Age of the Defendant.**--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1.

As a threshold matter, the reference to "subdivision (2)" requires Jackson to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the

following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

> **(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Jackson bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

7

Jackson has failed to show "extraordinary and compelling reasons" for a sentence modification. To begin with—as we noted in the First Order—he can't satisfy the "Age of the Defendant" test. *See* First Order at 8. He is 51 years old, not 65; and he hasn't alleged any age-related decline. His request for relief therefore depends on his ability to meet either of the two avenues of the "Medical Condition of the Defendant" test. The first requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(i). The second requires him to show that he suffers from conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at n.1(1)(A)(ii).

To satisfy this test in his First Motion, Jackson relied only on (1) his (purported) rehabilitation and (2) the amount of jail time he's served. *See* First Order at 5–10.[3] This Court rejected those arguments *both* because they didn't meet the criteria laid out in the applicable policy statements—U.S.S.G. §1B1.13—and because they weren't true: Jackson *hadn't* rehabilitated himself in prison, and he *hadn't* served an unusually long amount of prison time. *Id.* at 9. And, since Jackson never claimed to have a terminal illness, he's left to argue that he suffers from a condition that substantially diminishes his ability to provide self-care in prison. *See generally* First Motion; Renewed Motion.

In his Renewed Motion, Jackson offers his obesity as a condition that—combined with the COVID-19 pandemic—does just that. *See* Renewed Motion at 6–8. But obesity, even combined with the COVID-19 pandemic, doesn't constitute an "extraordinary and compelling" circumstance. *See United States v. Battis*, 2020 WL 5094844, at *2 (M.D. Fla. Aug. 28, 2020) ("Although obesity poses an increased risk of severe illness from the virus, it does not establish an extraordinary and compelling circumstance."); *United States v. Hayes*, 2020 WL 3611485, at *2 (M.D. Fla. July 2, 2020) (holding that

---

[3] In doing so, he notably failed to mention his obesity. *See generally* First Motion [ECF No. 131].

obesity and hypertension "alone or in combination with Covid-19" are not extraordinary and compelling circumstances).

The Court acknowledges that the spread of COVID-19 has been pervasive and devastating. It has challenged our institutions, undermined Americans' ability to maintain their economic security, and altered the way people interact. More fundamentally, it goes without saying, the pandemic has resulted in widespread suffering. In the United States alone, more than 32,300,000 people have tested positive for the disease, and over 575,000 Americans have died from it. *See* CDC, *COVID Data Tracker*, available at https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last accessed May 6, 2021). But "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Additionally, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberthard*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)). The Court sees no reason to depart from the BOP's well-reasoned view on this question. In sum, Jackson cannot establish that he satisfies the criteria set out by the Sentencing Commission in § 1B1.13.

Attempting to parry this conclusion, Jackson now contends that U.S.S.G. § 1B1.13 doesn't apply to motions for sentencing reductions filed *by inmates*. *See* Renewed Motion at 3–5. Distilled, his argument is that § 1B1.13 is not an "applicable" policy statement when it comes to motions filed *by inmates* because, by its terms, that section applies only "[u]pon motion of the Director of the Bureau of Prisons[.]" *United States v. Jones*, 980 F.3d 1098, 1110 (6th Cir. 2020). It's an interesting—and compelling—argument. And, while the Eleventh Circuit hasn't addressed it directly, *see United States v. Granda*, ___ F. App'x ___, 2021 WL 1246252, at *2 (11th Cir. Apr. 5, 2021) ("We've not yet held in a published opinion whether § 1B1.13, which on its face applies only to motions for compassionate release filed by the BOP and has not been amended following the First Step Act, constrains district

9

courts in considering compassionate release motions filed by prisoners themselves."), Jackson's position has been adopted by every circuit that has considered it, *see United States v. Brooker,* 976 F.3d 228, 235 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 282–85 (4th Cir. 2020); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020); *United States v. Funn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021); *United States v. McGee*, 992 F.3d 1035, 1050–51 (10th Cir. 2021).

We'll therefore assume that Jackson is right—and that a federal judge isn't required to consider the policy statements in § 1B1.13 when adjudicating an *inmate's* motion for compassionate release.[4] Even so, Jackson faces two insurmountable hurdles. The first is that, as the Eleventh Circuit has recently held, "*considering* the policy statements in § 1B1.13 is not an abuse of discretion, regardless of whether the consideration of those issues is *required*." *Granda*, ___ F. App'x ___, 2021 WL 1246252, at *5 (emphasis added). Consistent with that discretion, this Court hereby clarifies its view that those policy statements *are* helpful, as one factor among several, in elucidating the contours of the "extraordinary and compelling reasons" test. And, as we've explained—in both this and the First Order—those policy statements, together with the Court's analysis of the § 3553(a) factors, Jackson's failure to exhaust his remedies, his checkered criminal history, and his demonstrated penchant for recidivism, combine to preclude relief in the circumstances presented here.

Jackson's second problem is no less intractable. As the Sixth Circuit has said, a finding that § 1B1.13 doesn't, standing alone, control the analysis with respect to motions filed by inmates just means that "federal judges . . . have full discretion to define 'extraordinary and compelling [circumstances][.]'" *Jones*, 980 F.3d at 1111. Indeed, as the Sixth Circuit has noted, "the Commission failed to promulgate

---

[4] Of course, as we explained in our First Order, if § 1B1.13 *does* apply, Jackson's Motion fails for yet another reason—because he cannot show that he no longer poses a danger to his community. *See* First Order at 10–12.

any policy statement regarding motions submitted under § 3582(c)(1) for twenty-two years, yet district courts were perfectly capable of rendering decisions in compassionate release cases." *Id.* at 1111 n.21. Jackson is (apparently) obese and would prefer to be out of prison.[5] That's not an extraordinary circumstance—much less a compelling one.[6] Even putting aside the § 1B1.13 factors, then, he fails to meet the basic elements of the statutory test.

***

To recap: Jackson hasn't exhausted his administrative remedies, his circumstances are neither extraordinary nor compelling, and the § 3553(a) factors counsel against the reduction he seeks. As a result, after a careful review of the parties' filings, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** that Jackson's Renewed Motion for Reduction in Sentence [ECF No. 143] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 6th day of May 2021.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record
      Clarence Jackson, *pro se*

---

[5] Jackson's once-legitimate concerns about COVID-19 may soon become moot. The Bureau of Prisons has represented that, out of a total prison population of 127,000 inmates, there are only 126 active cases of COVID-19,. *See* BOP COVID-19 Tracker, https://www.bop.gov/coronavirus/ (last accessed May 6, 2021). Of more relevance to Jackson is the fact that there are currently *zero* cases of active COVID-19 at his facility, FCI-Coleman. *Id.* The BOP has also vaccinated the vast majority of its inmates and staff. According to its most recent data, the BOP has administered 161,000 doses of COVID-19 vaccines to its 127,000 inmates and 36,000 staff members. In other words, if Jackson hasn't received a COVID-19 vaccine already, he's set to receive one very soon.

[6] Jackson also asks for mercy. *See* Renewed Motion at 10. Fair enough. But the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *Phillips*, 597 F.3d at 1194–95. And the test the governing statute lays out boils our inquiry down to whether Jackson's situation is "extraordinary and compelling." Because it isn't, his Motion fails.